966 F.2d 1441
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ANNAPOLIS ROAD, LIMITED, a Delaware Corporation; Alan
Stokes, Plaintiffs-Appellants,
v.
Darryk R. HAGNER, Detective, Anne Arundel County Police;
Robert P. Russell, Chief, Anne Arundel County Police; Leroy
Jonas, Director, Department of Inspections and Permits;
Anne M. Hatcher, License Administrator; Robert R. Neall;
Anne Arundel County, Maryland, a Body Politic by Charter,
Defendants-Appellees.
 No. 91-1205.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 8, 1992
Decided: June 2, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-91-2271-S)
 Argued: William Edward Seekford, Towson, Maryland, for Appellants.
 David Alan Plymyer, Deputy County Attorney, Anne Arundel County Office of Law, Annapolis, Maryland, for Appellees.
 On Brief: Judson P. Garrett, Jr., County Attorney, Anne Arundel County Office of Law, Annapolis, Maryland, for Appellees.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 I.
 
 1
 Annapolis Road, Ltd., a corporation which owns and operates an "adult" bookstore and coin operated video facility, and Alan Stokes, the manager of the bookstore ("appellants"), filed claims pursuant to 42 U.S.C. § 1983 and § 1988 against Anne Arundel County, Maryland, and certain county officials ("appellees"), alleging that the application and threatened application to them by appellees of various statutes had violated or would violate their First and Fourth Amendment rights. The first two statutes were county ordinances, one involving licensing criteria, and the other imposing a six-month moratorium on future licenses. The other pair of statutes were statutes of the state of Maryland prohibiting the display or depiction of sexual conduct for advertising purposes. Appellants alleged that the statutes, or the threatened application of them, constituted prior restraint of their First Amendment rights, and denial, suppression and abridgment of other constitutional protections.
 
 
 2
 Appellants filed their claim on August 13, 1991. Appellees filed a response alleging a failure on the part of appellants to state a claim upon which relief could be granted. On September 11, 1991, the district court entered an opinion and order dismissing the entire complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Appellants filed a timely notice of appeal.
 
 II.
 
 3
 Appellants own and operate an "adult" bookstore which retails books, magazines, newspapers, and videos which include pictures displaying explicit sexual acts on their covers. In addition, the store contains nine single patron coin-operated video booths, better known as "peep-show" booths.
 
 
 4
 On May 11, 1984, appellee Darryl Hagner, a detective with the Anne Arundel County Police Department, seized a number of books, magazines and films from the store pursuant to Article 27, Section 416-D of the Maryland Code, which prohibits the public display of depictions of certain sexual acts. Appellants were convicted of various counts of displaying those materials, but the bookstore remained in business.
 
 
 5
 On July 15, 1991, Bill # 68-91, a bill to impose a moratorium on the issuance of amusement licenses ("Class Y" licenses) for private viewing machines (the peep-shows booths), was introduced before the Anne Arundel County Council. The reason for the codification of Bill # 68-91 was the county's belief that the existing amusement licensing ordinance, §§ 2-1101-2-1110 of Article 16 of the Anne Arundel County Code, were insufficiently specific as to location and operation standards for peep-show parlors. Bill # 68-91 sought to halt the issuance of new or renewed licenses until such standards could be promulgated. The Bill was signed on August 7, 1991, and took effect that same day, and was set to remain in effect until December 1, 1991.
 
 
 6
 Previously, on July 29, 1991, appellee Hagner and appellee Anne Hatcher, an officer of the County Department of Inspection and Permits, made an inspection of appellants' bookstore. The two found peep-show machines that were not covered by Class Y licenses. Hatcher gave an application for Class Y licenses to appellant Stokes.
 
 
 7
 In an attempt to avoid further trouble with the law, appellants closed the bookstore on August 1, 1991, and completed and filed applications for licenses for their peep-show machines. The original filing was procedurally incomplete, and the application was returned for resubmission. The August 6 resubmission was similarly incomplete. On August 7, 1991, Bill # 68-91, the "moratorium" ordinance, took effect, and pursuant to it, the county took no further action on appellants' application for licenses.
 
 
 8
 On November 21, 1991, Bill # 98-91, a measure which set the new standards for amusement licenses sought in Bill # 68-91, went into effect. Appellants were soon free to apply for a new license under Bill # 98-91, because the moratorium under Bill # 68-91 expired as of December 1, 1991.
 
 
 9
 Appellants sought declaratory and injunctive relief based on various alleged causes of action. First, appellants alleged that Article 27, Sections 416, and 418[1] of the Maryland Code were unconstitutionally enforced or threatened to be enforced by County officials. Specifically, appellants contended that individual appellees under color of the State law had, in 1984, sought and obtained illegal search warrants to seize material, and now threatened to do so again.
 
 
 10
 Second, appellants have argued that the new Class Y licensing provision, enacted pursuant to Bill # 98-91, is unconstitutional as a prior restraint on speech. Additionally, appellants allege that the activities of County officials constituted violations of 42 U.S.C. § 1983 because they caused a violation of appellants' clearly established constitutional and statutory rights and those of their patrons and employees.
 
 
 11
 The district court on September 11, 1991, dismissed all claims made by appellants. In so doing, the court ruled that: 1) appellants had not demonstrated, even by unilaterally closing their store, a sufficient cause for declaratory relief as against the nebulous threat of seizure and/or prosecution in the absence of a showing of a present objective harm or threat of some future harm real enough to justify declaratory relief; 2) there was no justiciable cause of action regarding the Class Y licensing ordinance, because it was not yet in effect;[2] 3) there was no justification for any claim of damages by appellants based on a single lawful inspection by County officials; 4) the restriction set out by the moratorium provision was not a prior restraint as it constituted a permissible time, place and manner restriction on sexually explicit coin operated video machines; and 5) the moratorium provision did not constitute a due process violation justifying a constitutional challenge.
 
 
 12
 Aspects of the district court's ruling have been mooted by the expiring of Bill # 68-91 (the "moratorium" provision) and the codification of Bill # 98-91 (the new Class Y licensing standards provisions).
 
 III.
 A.Mootness of Licensing Claim
 
 13
 Anne Arundel County Bill # 98-91 repealed the provisions of Article 16, §§ 2-1101 through 2-1110 effective on November 21, 1991. Those provisions had governed the application and granting requirements for Class Y licenses. Appellees have contended that appellants' claims regarding county licensing ordinances are mooted by the reversal and replacement of §§ 2-1101-2-1110. Although appellants have cited deficiencies in statutory provisions which remain on the books following the enactment of Bill # 98-91, appellees' contention that the relevant provisions of §§ 2201-2110 have been substantially repealed is correct.
 
 
 14
 The basis of appellants' claims that the previous licensing statute constituted a violation of their constitutional rights was their assertion that the provision assigned too much discretionary power to the Licensing Director, and did not provide statutory guidelines or standards to govern his or her determinations. The new licensing provisions, as altered by §§ 2-1105, 1107, 1108, 1109, and 1110 of Bill # 98-61, however, provide significant additional statutory guidelines to govern the Director's activity, and to identify the prohibited acts of licensees. The new guidelines include: an additional time limit for issuance determinations by the Director; a requirement that the Director give reasons in writing for any negative issuance determination; specific organizational, personnel and equipment requirements for licensees; specific guidelines governing license renewal and revocation; a more specific demarcation of prohibited acts of licensees; and a right to immediate appeal for unsuccessful applicants for renewal.
 
 
 15
 The new licensing statute thus provides substantially different requirements than those set out in the previous statute, upon which appellants' claim is based. In Maryland Highway Contractors v. State of Maryland, 933 F.2d 1246 (4th Cir. 1991), we ruled that when a statute that forms the basis for a complaint is repealed and replaced by another statute, particularly one that seeks to respond to the defects in the previous statute at issue in the complaint, the revision of the original statue has the effect of rendering the complaint moot. Id. at 1449-1450.
 
 
 16
 Accordingly, the revision of the Class Y licensing provision, providing significant additional limitations on discretionary activity by the Director, and providing specific standards to govern licensing activity, moots appellants' claims involving the enforcement and threatened enforcement of the previous statute.
 
 B.The Moratorium
 
 17
 There are, however, issues not mooted by the repeal of the original licensing statute. The moratorium provision of Bill # 68-91 was the statutory provision that affected appellants' license rights in the present case. Appellants were denied their application for a Class Y license not because of the provisions of the previous licensing statute, but because of the edict of Bill # 68-91 which set up a moratorium on issuing licenses which took effect one day prior to appellants' procedurally sufficient application. Accordingly, we must address the issue of the County's failure to grant the Class Y license, and whether the moratorium provided for in Bill # 68-91 constituted a basis for a § 1983 claim by appellants.
 
 
 18
 Two allegations must be made out to state a cause of action for a § 1983 claim. "First, the plaintiff must allege that some person has deprived him of federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980). The second prong of the test is met here, in that the government action in question, the moratorium required by the County statute, arises as under the color of territorial law. See West v. Atkins, 487 U.S. 42, 49 (1988) (when an official exercises power which is possessed by virtue of state law, "color of state law" requirement is met). The only remaining issue, therefore, is whether appellants have alleged harm which constitutes deprivation of a federal right.
 
 
 19
 The only apparent direct discussion of the propriety of the County's moratorium in appellants' brief on appeal, is their assertion, supported by precedent, that there is a presumption that their rights to sell printed material and to exhibit film, and the rights of others similarly situated, are protected by the First and Fourteenth Amendment. Appellants' assertion is indisputable. The fact that sexually explicit material may engender negative response from the majority of a legislature or community does not serve to withdraw all First Amendment protections from its purveyors. It is also clear, however, that a state or local entity has the authority to promulgate reasonable regulations regarding the sale of such material, as long as the government action does not place a prior restraint, undue burden, or harmful chilling effect on a selling party's freedom of expression.
 
 
 20
 Appellees contend that no such burden or restraint was occasioned by the moratorium on issuance of new Class Y licenses. As stated previously, appellants' bookstore provided two relatively distinct services to its customers. First, it made available for sale or rent pictorial and video explicit sexual material that a customer could transport out of the store. Additionally, the store had on site"peep-show" machines that provided the viewer, after inserting coins, the opportunity to view sexually explicit material on the store's premises. The Class Y license requirement extended to only the latter service, and the lack of the license did not restrict, in any way, appellants' ability to market or otherwise provide its material in any other manner than through the "peep show" forum. Accordingly, the County moratorium provision did not involve a direct content-based restriction on all of the speech promoted by appellants, but merely imposed a limited restriction on the time or manner through which the sexually explicit material could be presented to the public.
 
 
 21
 In Young v. American Mini Theaters, 427 U.S. 50 (1976), the Supreme Court addressed the issue of the potential prior restraint effect of state licensing and zoning regulations which restricted the commercial projection of sexually explicit films. In determining that the regulations did not constitute an unreasonable restraint on free speech, the Court opined that:
 
 
 22
 The city's general zoning laws require all motion picture theaters to satisfy certain locational as well as other requirements; we have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments ... The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances ... we are also persuaded that ... [the] restriction does not, in itself, create an impermissible restraint on protected communication.
 
 
 23
 Id. at 62 (emphasis added).
 
 
 24
 The point highlighted by the Court in Young, and of relevance in the present case, is that the facility of communication, and not communication in any particular form, is the focus of First Amendment protection. To the extent that appellants were able to show that there was an essential communicative element provided by the "peepshow" machines that could not be replaced by other material available in the store, its claim of prior restraint would perhaps have significant validity. Yet here there is no apparent communicative interest, and appellants fail to suggest one, promoted by the peep show booths that could not be promoted with equal success by the renting or sale of other explicit material.[3] See also Renton v. Playtime Theaters, Inc., 475 U.S. 41, 53 (1986) (allowing zoning restriction on adult theaters as long as the restrictions provide "reasonable alternative avenues of communication ... " for the explicit material), and Arcara v. Cloud Books, Inc., 478 U.S. 697, 705 (1986) (allowing the closing of a bookstore, and ruling that the potential burden on First Amendment rights was "mitigated by the fact that respondents remain free to sell the same materials at another location.").
 
 
 25
 In addition to the foregoing, it must be reasserted that the moratorium provision at issue here served to restrict appellants' expression for less than four months, for the specific purpose of promulgating more specific guidelines for the issuance and review of Class Y licenses, a necessity highlighted in appellants' own argument. Appellants, after the approximately four month moratorium expired, were free to re-apply for a Class Y license, under the new licensing requirements, and resume their commercial use of peep-show booths.[4]
 
 
 26
 The limited restriction on the manner of communicating sexually explicit material imposed by the moratorium ordinance did not impermissibly restrict the First Amendment rights of appellants justifying a conclusion that their federal rights were violated. Accordingly, the district court properly determined that appellant'ss 1983 complaint concerning the moratorium failed to state a claim upon which relief could be granted.
 
 C.Enforcement of Anti-Obscenity Statutes
 
 27
 Appellants have claimed that they are threatened with the unfair application of the State's anti-obscenity statutes.[5] They did not claim that the statutes themselves are invalid, but asserted that Officer Hagner acted arbitrarily in enforcing the statutes in his seizure in 1984, and that he has recently made threats suggesting that he will take such unjustified discretionary action again in the future.[6]
 
 
 28
 In Ellis v. Dyson, 421 U.S. 426, 432 (1975), the Supreme Court, citing its opinion in Steffel v. Thompson, 415 U.S. 452 (1974), held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." In Babbitt v. United Farm Workers National Union, 442 U.S. 289, 302 (1979) (citation omitted), the Court held that "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge the statute." The question on appeal, therefore, is whether the appellants have indicated a genuine, non-imaginary or nonspeculative threat that the statutes in question will be enforced in an unconstitutional manner.
 
 
 29
 A recent decision by a Maryland appellate court directly addressed the type of search and seizure performed by Officer Hagner in 1984 in appellants' store pursuant to § 416D, and concluded that "[t]he Fourth Amendment does not permit the issuance of a warrant that leaves it entirely to the discretion of the officers conducting the search to decide what items are obscene and are therefore subject to seizure." Randall Book Corp v. State, 497 A.2d 1174, 1180 (Md.App. 1985). Subsequent to the decision in Randall, a police officer is not imbued with the kind of arbitrary authority allegedly exercised by Hagner in 1984, when he determined the propriety of displayed material, and feared by appellants in the future. Prior to Randall, concern about a repeat of the arbitrary seizure carried out in 1984 might have been considered something other than speculative. But given the Maryland Court of Appeals specific indication of the proper procedure, a conclusion that the past, now disfavored, activity would be likely to be repeated is highly speculative.
 
 
 30
 Given the extreme unlikelihood that the feared unconstitutional enforcement of the State statute alleged by appellants will occur, the district court properly determined that appellants did not have standing to bring their claims for relief concerning the State statutes.
 
 D.Other 1983 Claims
 
 31
 Section 1983 liability for a municipality, like Anne Arundel County in the present case, only applies "where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." Canton v. Harris, 489 U.S. 378, 385 (1989) (citations omitted).[7] The only factual precedent provided by appellants to support its complaint against the County is the isolated activity of one police officer seven years in the past. Such an isolated action is clearly insufficient to support a § 1983 claim against the County. Much more significant and general activity on the part of a police force has been held not to provide basis or a § 1983 claim, because such activity failed to indicate "deliberate indifference to the rights of persons with whom the police come into contact" on the part of the police force as a whole. Id. at 388.
 
 
 32
 Accordingly, the district court properly dismissed appellants' claim against the County and the County officials.[8] The district court's dismissal of appellants' claims in the present case should be affirmed.
 
 AFFIRMED
 
 
 [1]
 Section 418 is a restriction on the sale of "obscene" material
 
 
 [2]
 At the time of its ruling the district court was correct as to the effectiveness of the Class Y licensing ordinance. But as of November 21, 1991, a new ordinance has been in effect
 
 
 [3]
 Appellants have supported their claim that the restriction on its in-house showing of videos constituted a prior restraint with irrelevant statistics about loss of profit. The fact that appellants are likely to become significantly more wealthy through the use of the peep show booths, than merely from dissemination of similar material in different forms, does not inform adjudication of First Amendment issues. "The inquiry for First Amendment purposes is not concerned with economic impact." Renton v. Playtime Theaters, Inc., 475 U.S. 41, 54 (1986)
 
 
 [4]
 While not relevant here, the shortness of the four month moratorium enhanced its reasonableness and rebutted any argument of unfairness or vindictiveness
 
 
 [5]
 Annotated Code of Maryland, Article 27 §§ 416D and 418
 
 
 [6]
 Specifically, the officer was alleged to have commented during his recent inspection of the bookstore premises: "I see you have some of those materials that aren't supposed to be here."
 
 
 [7]
 Appellants brought additional charges against five appellees in their official capacity. Such suits are adjudicated within the same principles of law that apply to suits against a municipality itself. Monell v. Department of Social Services of New York, 436 U.S. 658, 690-92 (1978); Giancola v. State of West Virginia Dept. of Public Safety, 830 F.2d 547, 550 (4th Cir. 1987). Accordingly the officers will not be held liable in their official capacity unless the municipality is found to be liable
 
 
 [8]
 Appellant makes additional claims against Appellees Hagner and Hatcher personally. The claim against Hagner provides no factual support for a conclusion that he participated in any violation of a federal right enjoyed by appellant since the seizure incident in 1984. Appellants have exhausted any claim regarding that incident in an unsuccessful past federal action. The claim against appellee Hatcher focuses on her letter sent to appellants denying their license on August 8, 1991, because of the imposition of the moratorium. But since we have concluded that the moratorium and its application did not violate appellants' constitutional rights, it is clear that Hatcher can not be held liable for a constitutional violation in participating in the application of the moratorium