Dennis D'AMBRA, Plaintiff,

v.

CITY OF PROVIDENCE, Defendant.

No. 97–162L.

United States District Court,
D. Rhode Island.

Sept. 28, 1998.

*DECISION AND ORDER*

LÁGUEUX, Chief Judge.

In March 1997, the City of Providence ("defendant") rejected the application of Dennis D'Ambra ("plaintiff") for a license to offer adult entertainment at 257 Allens Avenue. This kind of entertainment, described for the record in the City's Comprehensive Zoning Ordinance, § 1000.8, is a permitted use in an industrial zone where the plaintiff's property is located.

The Board of Licenses unanimously rejected plaintiff's application on March 3, 1997 based on a new policy. As Chairman Raymond Dettore, Jr. explained at the meeting:

> the policy of the administration at this time was to not allow any additional adult entertainment licenses in the City of Providence, regardless of the location and that the board on Friday, at least adopted that position, that they would adhere to that policy and not grant any adult entertainment licenses at that or at this time in the City of Providence regardless of the location.

(Tr. of Bd. of Licenses, at 4–5.)

The parties have stipulated that there had been no prior notices or announcements of this new policy ("the moratorium") and that the Board had no reason to deny the application other than the moratorium. (Stipulated Facts and Docs. at 2.)

The parties have offered little evidence of the drafting of the moratorium or its exact scope beyond Dettore's assertion that the Board will summarily reject any application for an adult entertainment license pursuant to that policy. This Court notes that neither party has shown whether the moratorium is permanent or temporary, whether the rejection of plaintiff's application is final or merely postponed to a date when he can reapply. In the pleadings, defendant claims the moratorium is "temporary in nature," (Def.'s Mem. in Supp. of Mot. for Sum.J., at 6), and in the March 9, 1998 hearing before this Court, defendant's counsel repeated that assertion. However, no evidence has been offered beyond a transcript of the Board's hearing, and neither the Board nor defendant has suggested a date when the ban will end. It appears

John A. Glasson, John W. Dineen, Yesser, Glasson & Dineen, Providence, RI, for plaintiffs.

Kevin F. McHugh, Providence, RI, for defendants.

that the moratorium continues in effect to this date, more than 18 months after its adoption.

Plaintiff had the right to appeal the Board's decision through a Writ of Certiorari to the Rhode Island Supreme Court. *See Thayer Amusement Corp. v. Moulton,* 63 R.I. 182, 7 A.2d 682, 685 (R.I.1939). That appellate remedy is discretionary and does not involve a de novo hearing. It does involve, however, a review of the record of the Board of Licenses. *See id.* at 689. Plaintiff chose not to request the Writ in this case.

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of the First Amendment, the procedural due process and takings clauses of the Fifth and Fourteenth Amendments, substantive due process, and the state Open Meetings Law, R.I.Gen.Laws § 42–46–1 et seq. (1993). This case is now before the Court on cross-motions for summary judgment and in order for decision.

People who make law must respect the law. "In a democracy, power implies responsibility. The greater the power that defies law the less tolerant can this Court be of defiance." *United States v. United Mine Workers of America,* 330 U.S. 258, 312, 67 S.Ct. 677, 705, 91 L.Ed. 884 (1947) (Frankfurter, J., concurring). That responsibility drives the outcome of this case. This Court recognizes limitations on its power. That requires a dismissal of the procedural due process and takings claims. At the same time, defendant must recognize the limitations on its power and the paramount position of the First Amendment.

Providence is not the first city to navigate the intersection of the First Amendment and nude dancing. United States Supreme Court doctrine on the secondary effects of that conduct and speech has been stable for more than a decade, and the City has an existing zoning ordinance which is presumptively valid in that area. Yet defendant chose an indefinite ban on new licenses, an executive fiat forbidding protected speech in the entire municipality. If there was a more unconstitutional way for the City to go about its business, then it does not come easily to mind.

For the reasons outlined below, this Court concludes that the moratorium violates the First Amendment. Therefore, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. The City will be required to issue an adult entertainment license to plaintiff.

Additionally, this Court concludes that it lacks jurisdiction on some claims because plaintiff did not exhaust available state remedies. Plaintiff must be content with remedies derived from application of the First Amendment. However, this Court makes additional holdings because other issues were fully argued and could resurface if this controversy were to continue. For the reasons outlined below, this Court denies the request for relief made pursuant to the procedural due process and takings clause claims contained in the Complaint.

## I. *Legal Standard for Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credi-

bility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

█ The coincidence that both parties move simultaneously for summary judgment does not relax the standards under Rule 56. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996). Barring special circumstances, the Court must consider each motion separately, drawing inferences against each movant in turn. *See id.*

## II. *Takings and Procedural Due Process Claims*

To prevail on these claims, plaintiff must have been deprived of a property interest recognized by state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Marrero–Garcia v. Irizarry*, 33 F.3d 117, 121 (1st Cir.1994). Although defendant argues that an adult entertainment license cannot be property, (Def.'s Memo. in Supp. of its Mot. for Sum.J., at 2–3, 7), this Court follows recent Rhode Island Supreme Court precedent that recognizes a constitutionally-protected right in this circumstance. *See Pitocco v. Harrington*, 707 A.2d 692, 695–97 (R.I. 1998) and discussion below.

However, this Court has limited powers. It may not act indiscriminately, either to ignore federal precedent or to invade the role of state courts. As a matter of law, a plaintiff must exhaust state remedies before a federal court can decide either a procedural due process or a takings clause case. The doctrines rely on different precedent, but they rest on the same fundamental policy. On these issues, Rhode Island must have the opportunity to clean its house before a federal court intervenes.

### A. *Property interest in an adult entertainment license*

█ This Court agrees with plaintiff that the Rhode Island Supreme Court recently recognized a property right in a license that a government official denies "upon a ground other than one that comes within the scope of the official's authority." *Pitocco*, 707 A.2d at 696. Because plaintiffs "were entitled to approval of the permit they sought, we [hold] that [ ]this entitlement amounted to a constitutionally protected property interest." *Pitocco*, 707 A.2d at 695–96 (citing *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202, 213 (R.I.1997)).

In *Pitocco*, the Rhode Island Supreme Court reinstated a § 1983 due process claim against a town and the town's building official who "arbitrarily refused to issue [the Pitocco family] a building permit pursuant to town policy based solely on his improper adjudication of them as zoning violators." *Id.* at 697. The *Pitocco* Court noted that the local building officer is bound to follow the zoning ordinance and that if the permit application conforms to applicable laws, the applicant is entitled to the permit. *See id.* at 696. The key issue is the government official's lack of discretion. Denial of the permit is arbitrary where the official has limited authority and goes beyond that scope. *See id.; accord Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir.1995) (applying New York law to a dispute over an excavation permit).

Nothing in *Pitocco* limits the holding to building permits or to cases concerning physical property. The *entitlement to the permit* was the protected property interest. *See Pitocco*, 707 A.2d at 695–96. There was no emphasis on the physical property itself, so the doctrine applies to plaintiff's claim. If the Board of Licenses was bound to grant the adult entertainment license and refused based on a ground outside its authority, then plaintiff had a property interest in the license. That property interest cannot be taken without compensation or due process.

### B. *Exhaustion of remedies in the takings claim*

█ However, plaintiff's claim under the takings clause of the Fifth Amendment must

fail because plaintiff has not applied for compensation from defendant in the state courts. It is clear that a plaintiff first must be denied compensation before he can maintain an action for deprivation of the Fifth Amendment's takings clause. *See Williamson County Reg'l Planning Comm'n. v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985); *Q.C. Constr. Co., Inc. v. Verrengia,* 700 F.Supp. 86, 88–89 (D.R.I.1988) [*hereinafter Q.C. II* ]. The rationale underlying this holding is that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Reg'l Planning Comm'n.,* 473 U.S. at 194, 105 S.Ct. at 3120.

Plaintiff finds himself in a parallel situation to the *Q.C. II* plaintiffs:

Since plaintiffs have clearly not exhausted any state compensatory procedure, they must demonstrate that Rhode Island either lacks such a procedure or that it is inadequate. Here, plaintiffs have failed to show that the state would deny them a means of seeking redress. To the contrary, plaintiffs availed themselves of R.I.G.L. § 45–15–5 in order to obtain compensation, but became side-tracked by filing a complaint in federal rather than state court. While Rhode Island law does not explicitly provide a procedure for securing just compensation for a temporary taking of property by regulation, § 45–15–5 establishes a means through which one owed money by a municipality can obtain redress. Obviously, plaintiffs recognized the seeming applicability of this section to their situation.

Section 45–15–5 provides as follows:

Every person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not

made him by the town or city treasurer of such town or city within forty (40) days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same.

This section apparently creates a procedure through which a property owner may seek just compensation. *Cf. Mesolella v. City of Providence,* 508 A.2d 661 (R.I.1986) (implying that § 45–15–5 provides a procedure for one injured by an improper zoning ordinance to seek damages).

*Q.C. II,* 700 F.Supp. at 89.

■ The only exception to the doctrine is futility. The First Circuit has said that "exhaustion of administrative remedies will not ordinarily be required where the hierarchs have made it quite plain that the relief in question will be denied." *Gilbert v. City of Cambridge,* 932 F.2d 51, 61 (1st Cir.1991). However, the *Gilbert* Court was clear that "the mere possibility, or even the probability" that relief will be denied should not be enough to trigger the excuse. *Id.* Ordinarily, the claimant must file one meaningful application for administrative relief. *See id.* Plaintiff cannot prove that demanding payment would have been futile. Therefore, plaintiff has the same option as the *Q.C. II* plaintiffs—to present his claim to defendant and to commence a state court action to collect the money. Only after the government has refused compensation does the takings clause action become ripe.

C. *Exhaustion of remedies in procedural due process claims*

■ Similarly, plaintiff's procedural due process claim under the Fourteenth Amendment fails because plaintiff has not sought review of the Board order in the Rhode Island Supreme Court. Both the United States Supreme Court and First Circuit have been clear that for a procedural due process claim to be heard in federal court, a plaintiff must allege that the state provides no constitutionally-adequate remedy. *See Zinermon v. Burch,* 494 U.S. 113, 125–26, 110 S.Ct. 975, 983–84, 108 L.Ed.2d 100 (1990); *Rumford Pharmacy, Inc. v. City of East Providence,*

970 F.2d 996, 999 (1st Cir.1992); *Roy v. City of Augusta,* 712 F.2d 1517, 1522–23 (1st Cir. 1983). Plaintiff's burden to prove inadequate remedies must be rigorous because the federal court has a limited role. As the First Circuit said:

> If the federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exist, 'every disgruntled applicant could move its procedural grievances into the federal courts [, and ] any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would be the order of the day'.

*Rumford Pharmacy, Inc.,* 970 F.2d at 999 (quoting *Roy,* 712 F.2d at 1523) (internal punctuation omitted).

The *Roy* court was explicit that the due process requirement was satisfied by a hearing before a local council and subsequent state court review. *See Roy,* 712 F.2d at 1523. This case is controlled by that precedent because plaintiff had the opportunity to seek review in the Rhode Island Supreme Court. Plaintiff argues that appeal would have been useless because the Board of Licenses hearing was so perfunctory that the justices would have had no record to review. (Pl.'s Supp.Memo. at 2.) The hearing was so flawed, plaintiff argues, that the Writ of Certiorari was merely a Potemkin-village remedy. However, this is not so. The Rhode Island justices could have examined a record identical to the one presented to this Court, and flaws in procedure would have been just as obvious. The *Pitocco* and *L.A. Ray Realty* decisions were not direct appeals of licensing decisions, but they suggest that the Rhode Island Supreme Court is attentive to this species of constitutional violations. The *L.A. Ray Realty* Court was uncompromising in its finding that the local "predeprivation hearings were a sham in which officials rendered decisions that were preordained." *L.A. Ray. Realty,* 698 A.2d at 213. That same Court was available to plaintiff under the process provided by Rhode Island law.

This case would have been different if, on appeal, the Rhode Island justices had fulfilled plaintiff's dire predictions—for example, by summarily affirming the Board of Licenses after forbidding all argument and admitting no evidence other than the hearing transcript. A sham hearing followed by a sham judicial review would not be due process, and this Court would not refrain from taking jurisdiction. But those facts are not present, and plaintiff cannot meet the required burden. This Court cannot assume that the Rhode Island Supreme Court would violate the United States Constitution.

### III.  *First Amendment Claim*

■ Plaintiff's claim under the First Amendment was complete when the wrongful action was taken. *See Zinermon,* 494 U.S. at 125, 110 S.Ct. at 983. Nude or semi-nude dancing is entitled to First Amendment protection. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991); *AAK, Inc. v. City of Woonsocket,* 830 F.Supp. 99, 102 (D.R.I. 1993). Therefore, this Court addresses the claim on its merits.

Just as nude dancing can create secondary effects of crime and deterioration, even well-intentioned laws are deleterious if they violate the Constitution. Dancing—generally a protected form of expression—may be regulated when nudity is involved because the mix can lead to prostitution and spiraling crime. In turn, government regulation generally constitutional when done by prudent public servants must be rejected when a city ignores both its own laws and the Constitution. Unprincipled, heavy-handed government policies have the secondary effect of promoting censorship and sapping the rule of law.

The moratorium should not be confused with defendant's zoning ordinance. The zoning limitations on adult entertainment were upheld this year by the Rhode Island Supreme Court against a First Amendment challenge, *see DiRaimo v. City of Providence,* 714 A.2d 554 (R.I.1998), and they are not in dispute in this case.

This case came about because defendant adopted an indefinite, unilateral ban on new licenses. As such, the moratorium must survive a higher burden than the test applied to the zoning ordinance. At the initial *DiRai-*

*mo* trial, the Superior Court applied *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), precisely because the "zoning ordinance does not bar adult entertainment altogether." *DiRaimo v. City of Providence,* C.A. No. PC 93–2957, 1996 WL 936868, at *8 (R.I.Super.1996).

In contrast, the moratorium bars all new licenses, regardless of their location. Thus the moratorium is subject to the Supreme Court's test for statutes that provide "unbridled power" to the government decision-maker. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223–30, 110 S.Ct. 596, 603–07, 107 L.Ed.2d 603 (1990); *compare with City of Renton,* 475 U.S. at 46, 106 S.Ct. at 928 (applying time, place and manner test because ordinance did not bar nude dancing everywhere in the city). Even with all inferences drawn against plaintiff, the moratorium fails that test, both because the Board of Licenses has unbridled power and because there is no limitation on the time within which the Board must make a decision.

However, the choice of test is of secondary importance because this Court holds that the moratorium also fails *City of Renton* 's time, place and manner test because it is not narrowly tailored. The policy bans all new speakers rather than differentiating between those that cause the secondary effects and those that do not.

## A. *Facial challenge*

██ The Supreme Court has voided licensing schemes far more permissive than defendant's moratorium because the schemes gave unbridled discretion to government officials or did not limit the time that the officials had to make decisions. *See, e.g., FW/PBS, Inc.,* 493 U.S. at 223–30, 110 S.Ct. at 603–07 (1990).

"We note at the outset that petitioners raise a facial challenge to the licensing scheme. Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS, Inc.,* 493 U.S. at 223, 110

S.Ct. at 603 (citing *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798 & n. 15, 104 S.Ct. 2118, 2125 & n. 15, 80 L.Ed.2d 772 (1984)); *accord City of Lakewood v. Plain Dealer Publ. Co.,* 486 U.S. 750, 755–59, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988) (holding that licensing aimed at expression or expressive conduct is especially right for facial challenge).

██ "First, a scheme that places 'unbridled' discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *FW/PBS, Inc.,* 493 U.S. at 225–26, 110 S.Ct. at 605 (quoting *City of Lakewood,* 486 U.S. at 757, 108 S.Ct. at 2144). "Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *Id.,* at 226, 110 S.Ct. at 605.

The moratorium here is facially invalid under the Supreme Court's test. As noted above, the evidence is not conclusive whether the moratorium was permanent or temporary, whether the rejection of plaintiff's application was final or merely put on the back burner. However, that issue of fact is not material. No matter the outcome, the moratorium fails one or both of the independent prongs in *FW/PBS, Inc.* If the Board of Licenses ruling was a final decision, then the Board had unbridled discretion to reject any application for any reason. If the Board of Licenses was merely creating a delay and plaintiff could be reheard after the moratorium ended, then defendant failed to place limits on the time to make a decision.

### 1) *Unbridled Discretion*

If the moratorium is permanent, then it gives the Board of Licenses unbridled discretion to reject an applicant. Defendant has stipulated that "The City had no grounds personal to the plaintiff for denial of the licenses, other than the policy mentioned on March 3, 1997." (Stipulated Facts and Docs. at 2.) If the Board could reject plaintiff, who had no personal faults material to the application, then the Board could reject anyone. It was creating its rules from whole cloth.

In *Lakewood,* the Supreme Court voided a law that required newspaper companies to license coin-operated boxes annually and gave the mayor discretion to accept or reject the applications. The statute put no limit on the mayor's discretion, requiring only an explanation for the denial. *See City of Lakewood,* 486 U.S. at 769, 108 S.Ct. at 2150. The Supreme Court rejected the law, saying that "[t]o allow these illusory 'constraints' to constitute the standards necessary to bound a licensor's discretion renders the guarantee against censorship little more than a high-sounding ideal." *Id.,* 486 U.S. at 769–70, 108 S.Ct. at 2151.

Compared to defendant's moratorium, the *Lakewood* regulation is a model of restraint. The Lakewood mayor was bound by officially-passed legislation and had to offer an explanation for decisions. The Providence Board of Licenses claimed to have the power to reject any application based on an unwritten policy of the "administration." Obviously this is unbridled discretion, and it must be defeated by the First Amendment's guarantee against censorship.

2) *Unlimited Time*

If the moratorium is merely temporary and plaintiff could apply again after it expires, then it gave the Board of Licenses an unlimited time in which to make its ruling. Defendant asserts that the policy is temporary, and regarding plaintiff's motion for summary judgment, this Court views that evidence in the light most favorable to the non-moving party. However, there was no mention of a deadline during the March 3, 1997 hearing, and the moratorium is now more than 18 months old with no end mentioned in the record.

The *FW/PBS* Court worried precisely about that kind of delay creating a loophole in the First Amendment. "Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *FW/PBS, Inc.,* 493 U.S. at 227, 110 S.Ct. at 605.

Again, the moratorium is even more sweeping than the regulation voided by the Supreme Court. At least in Dallas, the police chief had to respond in 30 days and only the health, fire and building inspectors had unlimited times to act. In this case, defendant provided no date when the application would be reconsidered and no way in which plaintiff could expedite the process. The only hint to plaintiff that he might reapply was Dettore's comment that the policy was to reject applications "at that or at this time." (Tr. of Bd. of Licenses, at 5.) Certainly, this fails the constitutional test under *FW/PBS.*

B. *Time, place and manner restrictions*

Even if a facial challenge were inappropriate, the moratorium is still invalid because it is not narrowly tailored. Thus, it fails the test that requires that time, place and manner restrictions on protected speech be content neutral, be narrowly tailored and provide alternative channels for communication of the information. *See Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989); *City of Renton,* 475 U.S. at 49–50, 106 S.Ct. at 930.

The moratorium is a total ban, and at a minimum, it is not narrowly tailored. Defendant's claim that the ban is limited because it is temporary and only affects new licenses is specious.

First, the moratorium is not temporary; it is indefinite. Temporary implies a brief, circumscribed time period. This has lasted 18 months, and the record gives no hint when it would end. The Fourth Circuit did uphold a 5–month ban on coin-operated video machines in an unpublished case cited by defendant, but that ban was for a defined, limited period of time. *See Annapolis Road Ltd. v. Hagner,* 1992 WL 120209, at *1, *5, 966 F.2d 1441 (4th Cir.1992). Additionally, that ban was invoked for the express purpose of giving the locality time to amend its zoning laws. *See Annapolis Road Ltd.,* 1992 WL 120209, at *5, 966 F.2d 1441. Defendant has set no time limit on its moratorium, and it gives no reason for the ban to exist other than the general prevention of secondary

effects already addressed by the zoning ordinance.

Second, the fact that existing licenses are not affected by the moratorium does not make it "narrowly tailored" when applied against plaintiff. The issue in this case is plaintiff's First Amendment rights. He has no current license for this protected speech, so he must have an opportunity to obtain one. The ban must be narrowly tailored so that its effects are minimal on the speakers it affects. People with current licenses are not affected, so their situation is irrelevant.

In *Rock Against Racism*, the Supreme Court explained narrow tailoring by differentiating between a hypothetical ban on handbills and New York City's requirement that bands use a city sound engineer.

> "The guideline does not ban all concerts, or even all rock concerts, but instead focuses on the source of the evils the city seeks to eliminate—excessive and inadequate sound amplification—and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils. This is the essence of narrow tailoring. A ban on handbilling, of course, would suppress a great quantity of speech that does not cause the evils that it seeks to eliminate, whether they be fraud, crime, litter, traffic congestion, or noise. For that reason, a complete ban on hand billing would be substantially broader than necessary to achieve the interests justifying it."

*Rock Against Racism*, 491 U.S. at 799–800 n. 7, 109 S.Ct. at 2758 n. 7 (citations omitted). Defendant's moratorium corresponds to a ban on handbills. The policy does not differentiate between license applicants to deny those who will cause the secondary evils that the city seeks to prevent. Instead, defendant bans all. *Compare with City of Renton*, 475 U.S. at 52, 106 S.Ct. at 931 (noting that city ordinance was narrowly tailored because it affected only the category of theaters shown to produce the secondary effects).

## IV. *Substantive Due Process and Open Meetings Law Claims*

Because the First Amendment claim is dispositive, this Court does not reach the substantive due process and Open Meetings Law claims.

## V. *Remedies*

One proper remedy for an unconstitutional exercise of the police power is a declaration of the invalidity of that action or policy. *See Q.C. Constr. Co., Inc. v. Gallo*, 649 F.Supp. 1331, 1338 (D.R.I.1986) [*hereinafter Q.C. I* ]. Therefore, this Court declares that the moratorium promulgated by the City administration and applied by the Board of Licenses against new adult entertainment licenses is unconstitutional because it violates the First Amendment.

Injunctive relief is also an appropriate remedy for a constitutionally defective police power regulation. *See, e.g.*, Dan B. Dobbs, *Dobbs Law of Remedies* § 2.9(2) (2d ed.1993); *Q.C. I*, 649 F.Supp. at 1338–39. In issuing permanent injunctive relief, a district court has "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Brown v. Trustees of Boston University*, 891 F.2d 337, 361, n. 23 (1st Cir.1989) (quoting *NLRB. v. Express Publishing Co.*, 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed. 930 (1941)). At the same time, an injunction should be narrowly tailored to give only the relief to which the plaintiff is entitled. *See Brown*, 891 F.2d at 361 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979)).

## CONCLUSION

For the preceding reasons, defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted.

The parties have stipulated that defendant had no reason to reject plaintiff's application other than the unconstitutional moratorium. Therefore, plaintiff was entitled to a adult entertainment license. This Court, therefore, issues a mandatory injunction requiring the Providence Board of Licenses to issue an adult entertainment license pursuant to

plaintiff's application considered in March 1998, provided plaintiff pays any appropriate fees therefor.

Plaintiff also is entitled to costs and an award of counsel fees under 42 U.S.C. § 1988. Any motion for such costs including counsel fees shall be made within twenty (20) days of this decision. The application for counsel fees must be supported by a detailed, contemporaneous accounting of the time spent by the attorneys on this case. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984).

Counsel for plaintiff shall draft and submit to the Court a proposed form of judgment.

It is so Ordered.