Milton R. HOWARD and EMRO
Corporation, d/b/a J.R.'s
Lounge, Plaintiffs,

v.

The CITY OF JACKSONVILLE, a
Florida municipal corporation,
Defendant.

No. 3:00–CV–647–J–20B.

United States District Court,
M.D. Florida,
Jacksonville District.

June 27, 2000.

Gary S. Edinger, Law Office of Gary Edinger, Gainesville, FL, for Milton R. Howard, EMRO Corp.

Tracey I. Arpen, Jr., Karl J. Sanders, Office of General Counsel, for City of Jacksonville.

Lawrence G. Walters, David A. Wasserman, Wasserman & Walters, Winter Park, FL, for Samaron, Inc.

### *ORDER AND PRELIMINARY INJUNCTION*

SCHLESINGER, District Judge.

This case is before the Court on Plaintiff's Verified Complaint for Declaratory Judgment and Injunctive Relief and Motion for Preliminary Injunction (Doc. No. 1, filed June 14; 2000). Plaintiffs have complied with the procedural requirements of Rules 4.05(b) and 4.06, M.D.Fla.Loc.R. The Defendant has filed an opposition to the complaint and motion (Doc. No. 10, filed 6/21/00). Also before this Court is Sameron, Inc.'s Motion to Intervene (Doc. No. 8, filed 6/21/00). This Court heard oral argument on these matters June 22,

2000. Upon due consideration, this Court finds as follows:

■ First, Plaintiff, EMRO CORPORATION, has established that it operates a business at 2560 Emerson Street, Jacksonville, Florida, known as "J.R.'s Lounge" which provides nude entertainment by live dancers. SAMERON has established that it is a lingerie and gift shop which sells adult media. Therefore, J.R.'s Lounge and Sameron are "Adult Businesses" as defined by the Jacksonville Code of Ordinances. Further, Plaintiff, MILTON R. HOWARD has established he is the sole shareholder and principal officer of EMRO CORPORATION and has managerial control over the business. HOWARD is actively seeking other sites in Jacksonville to develop and operate other adult entertainment establishments. The nude dancing and adult media offered by Plaintiff and Intervenor are claimed to be non-obscene, constitutionally-protected communication. Accordingly, the aforementioned have standing to make this constitutional challenge to Defendant's Moratorium Ordinance. Sameron's Motion to Intervene is GRANTED and it shall become a Plaintiff in this case.

Plaintiff Howard and Emro were the prevailing parties in the case of *Lady J. Lingerie, et al. v. City of Jacksonville*, 176 F.3d 1358 (11th Cir.1999), *cert. den.* —— U.S. ——, 120 S.Ct. 1554, 146 L.Ed.2d 459, 68 U.S.L.W. 3153 (U.S. April 3, 2000). Because of the ruling of the Eleventh Circuit Court of Appeals in *Lady J. Lingerie*, Plaintiffs are entitled to operate adult businesses in the CCG–2 zone.

Jacksonville requires an adult entertainment license before a business can offer adult entertainment in the City. *See* Section 150.203, Jacksonville Code. Howard has applied for such a license which was rejected because of the existence of the May 31, 2000 Ordinance 2000–447–E which is entitled:

AN ORDINANCE ESTABLISHING A TEMPORARY MORATORIUM ON THE ISSUANCE OF ADULT ENTERTAINMENT LICENSES: PROVIDING AN EFFECTIVE DATE.

The Ordinance which is the subject of this lawsuit establishes an absolute prohibition against the issuance of any adult entertainment licenses for a period of 120 days:

**Section 2. Temporary Moratorium Imposed.** The Council hereby imposes a temporary moratorium on the issuance or granting of any licenses permitting the operation of an adult entertainment or service facilities (sic) in the City of Jacksonville. This moratorium is imposed pursuant to the Council's police powers to protect the public health, safety, welfare and morals of the community at large.

**Section 3. Duration of Moratorium.** This moratorium shall remain in effect for 120 days from the effective date of this Ordinance or until such time as repealed by the Council, whichever first occurs.

Because the current ordinance regulating the licensing of adult businesses provides for a 45 day period of review, when added to the 120 day moratorium period, the Defendant has in effect barred adult entertainment businesses needing licenses from getting such licenses for almost six months.

### Discussion

■ A preliminary injunction is an 'extraordinary and drastic remedy' and should not be granted unless the movant meets its burden of persuasion with respect to each of the following prerequisites: (1) a substantial likelihood of success by the movant on the merits; (2) that the movant will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party; and (4) that the injunction, if issued, 'will not disserve the public interest.' *White's Place, Inc. v. Glover*, 975 F.Supp. 1333, 1339 (M.D.Fla.1997) (*quoting Anheuser–Busch, Inc. v. A–B Distributors, Inc.*, 910 F.Supp. 587, 589

(M.D.Fla.1995) (citations omitted)). The Court believes that Plaintiffs have met their burden of demonstrating that they are likely to succeed on the merits.

■ Adult entertainment is entitled to First Amendment protection. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Adult entertainment can create the secondary effects of crime and deterioration in a city, however, even well-intentioned laws regulating these types of businesses are deleterious if they violate the Constitution. Government regulation generally constitutional when done by prudent public servants must be rejected when the government ignores the Constitution. Unprincipled, heavy-handed government policies have the secondary effect of promoting censorship and sapping the rule of law. As articulated by the United States Supreme Court:

> When a student first encounters our free speech jurisprudence, he or she might think it is influenced by the philosophy that one idea is as good as any other, and that in art and literature objective standards of style, taste, decorum, beauty, and esthetics are deemed by the Constitution to be inappropriate, indeed unattainable. Quite the opposite is true. The Constitution no more enforces a relativistic philosophy or moral nihilism than it does any other point of view. The Constitution exists precisely so that opinions and judgments, including esthetic and moral judgments about art and literature, can be formed, tested, and expressed. What the Constitution says is that these judgments are for the individual to make, not for the Government to decree, even with the mandate or approval of a majority. Technology expands the capacity to choose; and it denies the potential of this revolution if we assume the Government is best positioned to make these choices for us.
>
> It is rare that a regulation restricting speech because of its content will ever be permissible. Indeed, were we to give the Government the benefit of the doubt when it attempted to restrict speech, we would risk leaving regulations in place that sought to shape our unique personalities or to silence dissenting ideas. When First Amendment compliance is the point to be proved, the risk of non-persuasion—operative in all trials—must rest with the Government, not with the citizen.

*U.S. v. Playboy Entertainment Group, Inc.,* —— U.S. ——, ——, 120 S.Ct. 1878, 1889, 146 L.Ed.2d 865 (2000).

Accordingly, the issue at hand is not what this Court or the Defendant thinks about adult entertainment establishments but rather whether the Defendant's Ordinance is an unconstitutional restraint on these types of businesses in violation of the free speech provision of the First Amendment.

This case came about because the Defendant adopted a total ban on new and renewal licenses. Thus, the moratorium must survive a higher burden than the test applied to the zoning ordinance in *Lady J. Lingerie. See D'Ambra v. City of Providence* 21 F.Supp.2d 106, 111 (D.R.I.1998).

■ As an initial matter, this Court notes that the requirement that a permit or license be obtained before adult entertainment is allowed constitutes a prior restraint. *See Lady J. Lingerie,* 176 F.3d at 1361–63. While prior restraints are not *per se* unconstitutional, they bear a heavy presumption against constitutional validity. *See FW/PBS Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The safeguards which must be present in a system of prior restraints affecting adult businesses include, *inter alia,* the following: (i) the restraint cannot place "unbridled discretion" in the hands of a government official or agency; (ii) any restraint prior to judicial review may be imposed only for a brief period of time and only for the purpose of preserving the status quo until the judicial determination is complete; and, (iii) the ordinance must

provide for judicial review. *See FW/PBS Inc.* 493 U.S. at 225–27, 110 S.Ct. 596; *See also, Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). This Court also finds that, contrary to Defendant's assertion, moratoria are governed by prior restraint analysis in the same manner as other permitting schemes. *See D'Ambra v. City of Providence,* 21 F.Supp.2d 106 (D.R.I.1998).

Defendant's Ordinance is an unconstitutional prior restraint. First, Defendant's ordinance does not provide for judicial review of non-permitting decisions, prompt or otherwise.

Second, even if the ordinance does not need an opportunity for judicial review because the moratorium effects all adult entertainment business and therefore the city is not exercising any discretion at all, the moratorium still fails because the time the moratorium is in effect is unreasonable.

"A scheme that fails to set reasonable time limits on the decision maker creates the risk of indefinitely suppressing permissible speech." *FW/PBS, Inc.,* 493 U.S. at 227, 110 S.Ct. 596. The city's ordinance applies an across the board 120 day moratorium on license issuing. This 120 day ban established by the moratorium ordinance is not a brief period of time—particularly when coupled with the 45 day period allowed for review of adult license applications under Section 150.203(e) and 150.207(c) of the Jacksonville Code. Case law indicates that a 165 day period is longer than it need be (or can be) in order to meet the asserted government interests. *See 11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.,* 58 F.3d 988 (4th Cir.1995), *cert. den.* 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995)(150 day review period unreasonably long). In *Lady J. Lingerie,* the Eleventh Circuit laid out the law for Defendant as to what type of ordinance will pass constitutional muster; Defendant does not need 165 days to adjust its ordinance to comport with this decision.

Further, the ordinance gives unbridled power to government officials. The Supreme Court has voided licensing schemes far more permissive than Defendant's moratorium because the schemes gave unbridled discretion to government officials. *See, e.g., FW/PBS, Inc.,* 493 U.S. at 223–30, 110 S.Ct. 596 (1990).

■■■■ This Court also notes that licensing aimed at expression or expressive conduct is especially appropriate for a facial challenge. *See FW/PBS, Inc.,* 493 U.S. at 223, 110 S.Ct. 596. But even if a facial challenge were inappropriate, the moratorium is also invalid because it is not narrowly tailored. Time, place and manner restrictions on protected speech must be content neutral, be narrowly tailored and provide alternative channels for communication of the information. *See Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). It is undisputed that the Ordinance is not content neutral and fails to provide alternative channels for communication. The Ordinance also fails the narrow tailoring requirement.

Defendant's claim that the ban is limited because it only affects new licenses is specious; the ordinance is not "narrowly tailored" when applied against the Plaintiffs. Plaintiffs have no current license for this protected speech, so they must have an opportunity to obtain a license. People with current licenses are not affected, so their situation is irrelevant. Plaintiff Howard has an existing license than cannot be renewed. Plaintiff Cameron currently needs a license to operate. In *Rock Against Racism,* the Supreme Court explained narrow tailoring by differentiating between a hypothetical ban on handbills and New York City's requirement that bands use a city sound engineer:

"The guideline does not ban all concerts, or even all rock concerts, but instead focuses on the source of the evils the city seeks to eliminate—excessive and inadequate sound amplification—and

eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils. This is the essence of narrow tailoring. A ban on hand billing, of course, would suppress a great quantity of speech that does not cause the evils that it seeks to eliminate, whether they be fraud, crime, litter, traffic congestion, or noise. For that reason, a complete ban on hand billing would be substantially broader than necessary to achieve the interests justifying it."

*Rock Against Racism,* 491 U.S. at 799–800 n. 7, 109 S.Ct. 2746 (citations omitted).

Defendant's moratorium does not differentiate between license applicants to deny those who will cause the secondary evils that the city seeks to prevent. Instead, Defendant bans all of these establishments needing a new license or license renewal. *Compare with City of Renton,* 475 U.S. at 52, 106 S.Ct. 925, (noting that city ordinance was narrowly tailored because it affected only the category of theaters shown to produce the secondary effects).

### Conclusion

■ The moratorium should not be confused with Defendant's zoning ordinance and they are not in dispute in this case. The moratorium bars all new licenses, regardless of their location. Moreover, the ordinance applies not only to nude dancing but all forms of adult entertainment. Even with all inferences drawn against the Plaintiff, the moratorium fails because it is unconstitutional; it is not limited to a brief period of time, not otherwise narrowly tailored, gives the government unbridled discretion and fails to provide for judicial review.

■ Plaintiffs have demonstrated a strong likelihood that they will prevail on the ultimate merits of this case for the reasons set forth above. The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury justifying the granting of a prelimi-

nary injunction. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Plaintiffs have met their burden of proving irreparable injury.

No harm is likely to occur to the City in the event that the moratorium ordinance is enjoined. The City has no interest in enforcing an unconstitutional law. Furthermore, the status quo is consistent with the opinion of the Eleventh Circuit in *Lady J. Lingerie.* In contrast, the Plaintiffs suffer to lose their First Amendment freedoms.

The public interest is served by the maintenance of First Amendment freedoms and could not possibly be served by the enforcement of an unconstitutional Ordinance. A preliminary injunction will further the constitutional remedies announced by the Eleventh Circuit in *Lady J. Lingerie.*

The Court concludes that no bond should be required of the Plaintiffs as Defendant is unlikely to suffer any injury as the result of the granting of the Motion for Preliminary Injunction.

Accordingly it is hereby ORDERED AND ADJUDGED as follows:

1. Motion to intervene is **GRANTED.**

2. Plaintiffs' Motion for Preliminary Injunction is hereby **GRANTED.** Defendant, its agents, employees and all others acting in concert with Defendant are enjoined from enforcing Ordinance 2000–447–E. The said preliminary injunction shall remain in effect under further Order of the Court.