**ATLANTIC BEACH CASINO, INC. d/b/a the Windjammer, et al., Plaintiffs,**

**v.**

**Edward T. MORENZONI, et al., Defendants.**

**Civ. A. No. 90-0471.**

United States District Court, D. Rhode Island.

Sept. 28, 1990.

Stephen J. Fortunato, Jr., R.I. Affiliate, American Civ. Liberties Union, Warwick, R.I., for plaintiffs.

John Charles Levanti, Westerly, R.I., for defendants.

## OPINION AND ORDER

PETTINE, Senior District Judge.

In the last few years legislators and citizens have paid increasing attention to the lyrical content of popular music. The interest is not entirely new, for "rulers have long known [music's] capacity to appeal to the intellect and to the emotions and have censored musical compositions to serve the needs of the state." *Ward v. Rock Against Racism,* — U.S. —, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). The controversy some groups have ignited is not, in itself, any reason to take such speech outside the First Amendment. Indeed, expression may "best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949). The message and reputation of the rap music group 2 Live Crew evidently came to the attention of the Westerly Town Council, for they have taken steps toward possibly preventing the group from playing a scheduled concert. It is in this way that 2 Live Crew became the subject of, though not a party to, the present litigation.

On September 19, 1990, plaintiffs, who have contracted to present the 2 Live Crew concert, moved for a temporary restraining order prohibiting the defendants, members of the Westerly Town Council, from holding a show cause hearing on September 24, 1990, concerning the revocation of plaintiffs' entertainment license; from revoking the plaintiffs' entertainment license; from prohibiting the 2 Live Crew concert scheduled for October 6, 1990; and from imposing any special requirements on plaintiffs relative to the October 6 presentation. On September 21, 1990, the parties and this Court agreed that the matter would be considered as an application for a preliminary injunction and that the show cause hearing would be continued until October 1, 1990, subject to and dependent upon this Court's ruling. Based on the September 21 conference and my review of the parties' briefs, this Court has determined that the central issue in this case is plaintiffs' facial challenge to the town of Westerly's licensing ordinances on First Amendment grounds. Because I find, for the reasons set out below, that the ordinances as written are unconstitutional under the First and Fourteenth Amendments, defendants are enjoined from conducting a show cause hearing and from revoking plaintiff's entertainment license. I also enjoin the defendants from prohibiting the concert for failing to allege sufficient harm to overcome plaintiffs' First Amendment rights.

## I. TRAVEL OF THE CASE

The plaintiffs in this case, Atlantic Beach Casino, Inc. and M.J. Murphy own and operate the Windjammer, a club in Misquamicut, Rhode Island, pursuant to entertainment and liquor licenses issued by the defendants, the Westerly Town Council. The club has a capacity of 1,700 persons and regularly books concerts and dances for adult members of the general public. These concerts feature live bands, some of them nationally and internationally known.

Prior to August 30, 1990 the Windjammer contracted with 2 Live Crew for a live performance scheduled for October 6, 1990. 2 Live Crew are a rap music group from Miami who have gained notoriety from repeated attacks on their lyrics on obscenity grounds. The most well-publicized events concerned a June 6, 1990 decision by U.S. District Court Judge Gonzalez finding the group's third album, *As Nasty as They Wanna Be,* obscene under civil standards. *See Skyywalker Records, Inc. v. Navarro,* 739 F.Supp. 578 (S.D.Fla.1990). Following the federal court decision, the first federal ruling on the obscenity of recorded music, the group was arrested after a performance in Hollywood, Florida. The group has not yet gone to trial on the criminal charges and is appealing the ruling in the civil case.

Undoubtedly aware of the group's history and the Windjammer's contract, the Town Council sent a letter to M.J. Murphy, general manager of the Windjammer, on August 30th directing him to appear before them for a public hearing on September 4, 1990 regarding the 2 Live Crew perform-

ance. At the meeting, members of the Council expressed their concerns about the message conveyed by the group's lyrics. Individual members discussed the supposed immorality of the songs and their contribution to "America's slide into the sewer." They were also concerned about public safety, in particular the possible rowdy behavior of the large number of the group's fans expected to come to the town for the concert.

At the conclusion of the meeting, the Council voted to refer the issue of obscenity to the Rhode Island Attorney General. The Town Council also advised the plaintiffs that it was considering revoking the liquor and entertainment licenses for the Windjammer. Eventually the Council set September 24, 1990, as the date for a show cause hearing on the licenses. Plaintiffs requested written notice of any statutes, ordinances or regulations relating to the action, as well as any data that the Town Council had with regard to any possible

problems the Council anticipated at the concert.

On September 14, 1990, the Council President sent a letter to the plaintiffs formally notifying them that the hearing would be held on September 24, and listing their "areas of concern." [1] The letter also indicated that the hearing was being held pursuant to the authority granted under Rhode Island General Laws 5–22–2 [2] and the Westerly Code of Ordinances Section 17–87.[3] On September 19, 1990, plaintiffs filed this action for injunctive relief.

## II. PRELIMINARY ISSUES

Before considering the merits of the motion for a restraining order, the Court must consider its own jurisdiction. Jurisdiction has properly been asserted under 28 U.S.C. § 1343. *See Hague v. C.I.O.*, 307 U.S. 496, 519, 59 S.Ct. 954, 965–66, 83 L.Ed. 1423 (1939). Moreover, this Court has jurisdiction to grant declaratory and injunctive re-

---

**1.** The areas of concern are as follows:

   1. The adequacy of parking facilities, special police and additional parking attendants to be provided at your facility on October 6, 1990, pursuant to 17–43(g) Westerly Code of Ordinances.

   2. The adequacy of your ability to protect public places from the incursions of others as currently prohibited by 19–7(a)(2) Westerly Code of Ordinances and 17–43(g) Westerly Code of Ordinances.

   3. Expected Public Safety problems regarding the unprotected shore of the Atlantic Ocean on Atlantic Beach on October 6, 1990, Section 17–27, Westerly Code of Ordinances.

   4. Your ability to provide an adequate number of sanitary facilities outside of your establishment, on October 6, 1990, Section 17–43(e), Westerly Code of Ordinances.

   5. Your ability to afford adequate avenues for fire exit from your facility on October 6, 1990.

   6. Your ability to monitor and control the expected 1,500 patrons, both inside and outside of your establishment on October 6, 1990. 17–43(g) and 19–8k of the Westerly Code of Ordinances, and applicable Fire Codes.

   7. The impact your proposed entertainment of October 6, 1990 will have on the ability of the Westerly Police Department to maintain its normal operations, and simultaneously maintain adequate protection and manpower for the anticipated number of persons to attend this function.

**2.** R.I.G.L. 5–22–2 provides:

   City and Town Licenses for Exhibitions. Town and city councils may grant a license, for a term not exceeding one (1) year, under such restrictions and regulations as they shall think proper, to the owner of any house, room or hall in the town, for the purpose of permitting exhibitions therein, which license shall be revocable at the pleasure of the town or city council.

**3.** Westerly has two ordinances governing the issuing and revocation of entertainment licenses:

   Sec. 17–84. Shows, motion pictures, performances, dances, balls—License required approval.
   No person shall maintain, operate or conduct any show, motion picture, theatrical performance, or other similar exhibition inside a building or structure designed, constructed and equipped for such purpose unless such person shall have a license issued by the Town Council, and approved by the Chief of Police, the Building Official, and Zoning Inspector; and no person shall maintain, operate or conduct any dance or ball unless such person shall have a license issued by the Town Clerk after approval of the Chief of Police.

   *     *     *     *     *     *

   Sec. 17–87. Same—Revocation of License.
   Any license granted under Section 17–84 and 17–88 [outside entertainment] may be revoked by the Town Council after public hearing for cause shown.

lief under 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

■ The defendants assert that this Court lacks subject matter jurisdiction because there is no case or controversy. The cases that the defendants cite for this conclusion, however, are inapposite. Plaintiffs are making a facial challenge to the town ordinance due to its lack of standards. The Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2142–43, 100 L.Ed.2d 771 (1988), *see Venuti v. Riordan*, 521 F.Supp. 1027, 1029–30 (D.Ma.1981). The 2 Live Crew performance is protected First Amendment activity. *See Ward*, 109 S.Ct. at 2753 (1989) ("Music, as a form of expression and communication, is protected under the First Amendment."). Therefore, the plaintiffs, who currently hold an entertainment license, need not wait for the defendants to review and deny their license before challenging the statute.

### III. INJUNCTIVE RELIEF

In order for plaintiffs to prevail in their request for a preliminary injunction, they must meet the following standards: the plaintiff must demonstrate a likelihood of success on the merits, immediate and irreparable harm, that the injury outweighs any harm engendered by the grant of injunctive relief and that the public interest will not be adversely affected by such grant. *LeBeau v. Spirito*, 703 F.2d 639, 642 (1st Cir.1983). I shall address each of these standards in turn.

### A. *Likelihood of Success on the Merits*

■ Rather than allow 2 Live Crew to perform and then prosecute for any illegal activity that could occur, the Town Council wishes to review and decide in advance whether to allow the performance to go forward. This is a prior restraint. *See*

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554–55, 95 S.Ct. 1239, 1244–45, 43 L.Ed.2d 448 (1975). "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). A licensing scheme involving such prior restraint survives constitutional scrutiny only when the law contains "narrow, objective and definite standards to guide the licensing authority." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969), *see Lakewood*, 486 U.S. 760, *Southeastern Promotions*, 420 U.S. at 553, 95 S.Ct. at 1243–44, *Cox v. State of Louisiana*, 379 U.S. 536, 557–58, 85 S.Ct. 453, 465–66, 13 L.Ed.2d 471 (1965), *Irish Subcommittee v. R.I. Heritage Commission*, 646 F.Supp. 347, 359 (D.R.I.1986).

The Westerly Ordinance, see *supra* note 3, provides even less guidance than the law struck down in *Shuttlesworth*. *Id.* 394 U.S. at 149, 89 S.Ct. at 937–38 (permit could be denied if demanded by the "public welfare, peace, safety, health, decency, good order, morals or convenience"). For example, Section 17–87 merely states, "Any license granted under Section 17–84 and 17–88 may be revoked by the Town Council after public hearing for cause shown." As in *Venuti*, the Westerly ordinance is utterly devoid of standards. *See* 521 F.Supp. at 1030–31 (striking down entertainment license ordinance). It leaves the issuance and revocation of licenses to the unbridled discretion of the Town Council. Our cases have long noted that "the danger of censorship and of abridgement of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use." *Toward a Gayer Bicentennial Committee v. Rhode Island Bicentennial Foundation*, 417 F.Supp. 632, 641 (D.R.I.1976) (quoting *Southeastern Promotions*, 420 U.S. at 553, 95 S.Ct. at 1242–44).

The defendants assert that they are guided by specific concerns for public safety, as outlined in their notice to plaintiffs, and not

by the message of 2 Live Crew's lyrics. When dealing with the First Amendment, however, the law does not allow us to presume good intentions on the part of the reviewing body. *Lakewood*, 486 U.S. at 770, 108 S.Ct. at 1243–44. The standards must be explicitly set out in the ordinance itself, a judicial construction or a well-established practice. *Id.* Without standards there is a grave danger that a licensing scheme "will serve only as a mask behind which the government hides as it excludes speakers from the ... forum solely because of what they intend to say." *Irish Subcommittee*, 646 F.Supp. at 357. Such exclusion is repugnant to the First Amendment.

This Court recognizes that the Westerly Town Council has a valid interest in regulating entertainment establishments. It is well established that time, place and manner restrictions on expressive activity are permissible, but even then the regulations must be "narrowly and precisely tailored to their legitimate objectives." *Toward a Gayer Bicentennial*, 417 F.Supp. at 638, see *Shuttlesworth*, 394 U.S. at 153, 89 S.Ct. at 940, *Cox*, 379 U.S. at 558, 85 S.Ct. at 466. The Westerly licensing ordinances do not even approach the necessary level of specificity constitutionally mandated.

Given the complete lack of standards in the ordinances and the long and clear line of precedent, plaintiffs' likelihood of success is overwhelming.

### B. *Immediate and Irreparable Harm*

If this Court does not grant the injunction, the plaintiffs will face a variety of harms. They will be forced to submit themselves to a standardless review process, they may be prohibited from presenting expressive activity on October 6, 1990 and they risk the loss of their entertainment license. As discussed, *supra*, this situation confronting the plaintiffs involves the prior restraint of expressive activity and as such constitutes immediate and irreparable injury. *See Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965).

Moreover, in assessing injury, the chilling effect upon the freedom of expression of others is to be considered. *Dombrowski*, 380 U.S. at 486–89, 85 S.Ct. at 1120–22. In the instant case, the Town Council's ability to threaten the plaintiffs with revocation of their license through an unconstitutional review process could inhibit their future decisions on the presentation of expressive activity, as well as those of all other license holders. "The threat of sanctions may deter ... almost as potently as the actual application of sanctions." *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). This chill, along with the more imminent harms plaintiffs face, clearly amounts to the necessary immediate and irreparable harm. Furthermore, there is no adequate remedy at law for these constitutional harms.

### C. *Balancing the Harms and Interests*

Addressing the equities of this situation, we must balance the potential injuries to each party from a grant or denial of the injunction. Although the defendants did not address any of the requirements for a preliminary injunction in their brief, any concerns that this Court assumes the defendants might have for the protection of the public interest or for the upsetting of their licensing system do not outweigh the harm to the plaintiffs' First Amendment rights if this unconstitutional system is allowed to stand. "In the pantheon of constitutional rights, the First Amendment is indeed the 'First' treasured among all." *Toward a Gayer Bicentennial*, 417 F.Supp. at 641.

### CONCLUSION

Having found that the plaintiffs meet all of the standards for the grant of injunctive relief, this Court enjoins any further proceedings under the Westerly licensing ordinances. While plaintiffs have not addressed the public safety issue, defendants have indicated that this is one of their major concerns. On the record before this Court, the defendants have fallen far short of demonstrating that plaintiffs' expressive activity meets the standard for prohibiting protected speech set out by the Supreme

Court in *Brandenburg v. Ohio:* that it is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). Therefore this Court enjoins the defendants from prohibiting the concert; however, if the defendants wish to pursue this issue, I will grant them the opportunity to present further evidence to this Court on October 1, 1990 at 1:30 p.m. This Court notes, however, the heavy presumption of unconstitutionality which defendants will have to overcome in seeking the prior restraint of First Amendment activity. *See Bantam Books,* 372 U.S. at 70, 83 S.Ct. at 639. "[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969).

## ORDER

Because Westerly Code of Ordinances, Sections 17–84 and 17–87 are facially unconstitutional, because the plaintiffs have met the other requirements for a preliminary injunction, and because defendants have failed to allege sufficient harm, IT IS ORDERED that defendants are enjoined from conducting a show cause hearing, revoking plaintiffs' license pursuant to these ordinances or from otherwise prohibiting the scheduled concert.