CADILLAC LOUNGE, LLC.

v.

CITY OF PROVIDENCE et al.

No. 99–407–M.P.

Supreme Court of Rhode Island.

Jan. 4, 2001.

Daniel A Silver, Robert E. Flaherty, Warwick, Kathleen M. Hagerty, Providence, for Plaintiff.

Kevin F. McHugh, Richard G. Riendeau, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on November 6, 2000, pursuant to a writ of certiorari seeking review of a decision by the Providence Board of Licenses (board or respondent) that granted and then subsequently revoked an adult entertainment license issued to the petitioner, Cadillac Lounge, LLC (Lounge or petitioner). For the reasons that follow, we grant the petition and quash the decision of the board.

The petitioner owns property at 345–361 Charles Street in the City of Providence. The property is in an M–1 Zoning District, a district in which adult entertainment is a permitted use under the Providence Zoning Ordinance. The petitioner applied for an alcohol beverage license and an adult entertainment license for a proposed adult entertainment nightclub. After a public hearing on January 6, 1999, the board granted both a Class B liquor license and an entertainment license for the planned Cadillac Lounge adult entertainment nightclub. The issuance of these licenses proved highly controversial within the neighborhood. An appeal was taken to the State Liquor Control Administrator concerning the liquor license, and several local residents, including elected officials sought a reconsideration of the adult entertainment license. On February 22, 1999, the board refused to reconsider the license application.

Undaunted by the board's refusal to reconsider the license, the remonstrants returned to the board on March 22, 1999. At the hearing before the state Liquor Control Administrator, it was discovered that the wrong building was used for the radius map, and therefore not all property owners were notified of the pending application in violation of G.L.1956 § 3–5–17. The liquor license was therefore revoked and the application was remanded to the board for a new hearing. The remonstrants sought reconsideration or recision of the adult entertainment license and argued that because the wrong location was described in the application, in considering the appropriateness of the license, the board was unaware of the exact location where the proposed adult entertainment

was planned.[1] The board granted the motion to reconsider and consolidated the hearing for both the liquor license and adult entertainment license applications.

The board conducted hearings and heard vocal opposition from local residents.[2] On July 14, 1999, citing testimony concerning potential secondary effects, the board found the property to be an unsuitable location for a nightclub, adult or otherwise, and rejected petitioner's entertainment license.[3]

Before this Court, petitioner asserted that the board's denial of the second application for an entertainment license constituted an abuse of discretion and an impermissible time, place, and manner restriction on speech activity. In addition, petitioner challenged the constitutionality of the Providence entertainment licensing ordinance and argued that the ordinance is overbroad and lacks definite standards for the board to follow when considering the issuance or denial of an entertainment license, thus resulting in an impermissible prior restraint on activity protected by the First Amendment. Because we agree that the board's decision denying petitioner's second application was arbitrary and capricious, and an abuse of the board's discretion, we refrain from addressing the remaining issues raised in the petition.

## Standard of Review

 "Our review on a writ of certiorari is restricted to an examination of the record to determine whether any competent evidence supports the decision and whether the decision maker made any er-

rors of law in that ruling[,]" and whether the decision "was not 'patently arbitrary, discriminatory, or unfair.'" *Asadoorian v. Warwick School Committee*, 691 A.2d 573, 577 (R.I.1997) (quoting *Altman v. School Committee of Scituate*, 115 R.I. 399, 404–05, 347 A.2d 37, 40 (1975)); *see also Brouillette v. Department of Employment and Training Board of Review*, 677 A.2d 1344, 1346 (R.I.1996). This Court will review the decisions of licensing boards to determine "whether such boards * * * have exceeded their jurisdiction" in reaching its decision. *Gimmicks, Inc. v. Dettore*, 612 A.2d 655, 659 (R.I.1992) (quoting *Fink v. Bureau of Licenses*, 90 R.I. 408, 414, 158 A.2d 820, 823 (1960)). "'In reviewing the action of a licensing authority on the question of whether it has exceeded its jurisdiction, we will examine the evidence, not to weigh it or pass upon its credibility but only to ascertain whether there is any legal evidence to support the ruling.'" *Id.* Pursuant to this standard, this Court must determine whether the board's decision denying the license, after having granted it earlier, was supported by relevant and competent evidence within the purview of the board's jurisdiction. We conclude that no such evidence existed and that the board exceeded its jurisdiction in revoking petitioner's previously issued entertainment license.

## Discussion

 In *DiRaimo v. City of Providence*, 714 A.2d 554 (R.I.1998), this Court addressed the constitutionality of the Providence Adult Entertainment Ordinance and held that the ordinance repre-

1. It was also disclosed that when the original application was filed by Richard Shappy, as majority stockholder, he apparently did not fully disclose his criminal record. However, at the time of the hearing on the new application, Mr. Shappy was no longer a stockholder in Cadillac Lounge, LLC.

2. None of the local residents who presented objections were property owners falling within the relevant two hundred foot radius of the property at issue.

3. Although not included in the petition before this Court, we note that during the same period, an appeal was taken to the State Liquor Control Administrator relating to the granted Class B liquor license. On March 2, 1999, the Department of Business Regulations remanded the liquor license application to the board. The parties currently are awaiting the decision.

sented a content neutral time, place, and manner regulation, and, was thus, a constitutional exercise of the city's legislative power. This case presents the Court with the question of whether, having enacted a zoning classification that permits the activity without exception, another licensing board may deny a license based upon the same factors. The property in dispute is located at 345–361 Charles Street in the City of Providence. This section of Charles Street is in an M–1 Zoning District, where adult entertainment is permitted without exception. The 1991 Providence Zoning Ordinance, section 1000.8, sets forth the definition of "adult entertainment," which clearly encompasses the proposed nightclub.[4] The Providence City Council (council), pursuant to G.L.1956 § 45–24–50(b), enacted the Providence Zoning Ordinances in accordance with the city's comprehensive plan. *See DiRaimo,* 714 A.2d at 562, 564 (Appendix A). Inasmuch as the council is required to develop a zoning plan that promotes the public health, safety, morals, and general welfare of the city and has determined that an M–1 district is an appropriate area for this activity, another licensing board may not apply the same criteria and find the location to be unsuitable.

■ "[The Providence] zoning provisions were plainly designed to reduce crime, encourage revitalization of a decaying downtown zone, maintain property values, and to preserve the quality of urban life, and not to eliminate opportunities to whatever expression is communicated by nude dancing." *Id.* at 564. Clearly, in designating the Charles Street area an M–1 zoning district, the council fully considered the public health, safety, morals, and general welfare, including potential sec-

ondary effects and concluded that this area was an appropriate location for this activity. Neither this Court nor a municipality's licensing board may second-guess this legislative determination.

Obviously, the council was bound to consider the city's comprehensive plan for the overall development of the city when it enacted the city's zoning ordinance. The council was required to enact an ordinance setting forth the various zoning districts in the municipality, the uses that were allowable in each district, either as of right or pursuant to a special exception, and in accordance with the comprehensive plan. As an exercise of its legislative authority, the council determined that an adult entertainment nightclub was an appropriate use in an M–1 zoning district and legislated accordingly. However, the board, at the urging of the remonstrants, chose to conduct its own examination into the suitability of the location for adult entertainment and to consider potential adverse secondary effects that may arise from the issuance of the license. We are of the opinion that this was an inappropriate area for the board's consideration and that the board was without authority to reexamine a legislative determination of the city council. Further, we are satisfied that the findings the board made relative to secondary effects were ambiguous and incapable of sustaining the denial of a license for a use permitted at that location. Although, the board is certainly vested with the authority to deny a license for reasons of public health and safety; it may not do so solely on the board's determination that the location is unsuitable.

Further, we are not persuaded that G.L. 1956 § 5–22–5[5] vests the board with the

---

4. The Providence Zoning Ordinance provides in part: "Section 1000.8. *Adult entertainment:* Any commercial establishment or business where any individual, employee, operator or owner works or performs in the nude."

5. **General Laws 1956 § 5–22–5 provides:**
 "**Local licensing of amusements.**—Any town council, the board of police commis-

sioners, or in the case of the city of Providence, the bureau of licenses, or any other licensing board or authority in any city or town may require a license for any place within its respective city or town at which any performances, shows, exhibitions, public roller skating, dances, or balls are presented or conducted for any term not exceeding one

authority to deny the license in this case. Although G.L. § 5–22–5 vests the licensing authority of the state's cities and towns with the power to deny, revoke, or refuse to renew any license, that power is likewise limited to licenses for activities or locations that present a danger to the public health or safety. The board heard testimony from many Providence residents that centered not on issues of public health and safety, but rather on the inappropriateness of this particular location for adult entertainment. Moreover, the chairman of the board offered no substantive reason or rationale supporting the decision to revoke the license and made no findings relative to public health and safety. The chairman referred to the Charles Street area as the "Gateway to the North End" that was important to the revitalization of that area. We conclude that this rhetorical determination is wholly insufficient to support a revocation of a license pursuant to § 5–22–5.

Accordingly, in light of our holding that the board was without jurisdiction to revoke the license in this case, we need not address the constitutionality of the ordinance save to hold that the Providence Zoning Ordinance, when read in conjunction with § 5–22–5, properly sets forth the permissible power vested in the Providence Board of Licenses.

Therefore, we conclude that the board employed inappropriate criteria for denying the license and that the decision rested on insufficient evidence and was thus arbitrary and capricious. Accordingly, we grant the petition for certiorari and quash the decision of the Providence Board of Licenses. We remand this to the full board with directions to issue the entertainment license to the petitioner forthwith.

year, and may deny, revoke, or refuse to renew any such license *only upon the ground*

*that the place presents a danger to the public health or safety."* (Emphasis added.)