SAINTS AND SINNERS a/k/a R.I. Cranston Entertainment, Inc. and Alan Bogossian, Plaintiffs,

v.

CITY OF PROVIDENCE; Arline Feldman; Alan Constantino; Margaret De Felice; Andrew Annaldo, Individually and in their official capacities as Members, the Providence Board of Licenses, and Gordon Fox, solely in his official capacity as Member, Providence Board of Licenses, Defendants.

No. 99–563–L.

United States District Court, D. Rhode Island.

Nov. 13, 2001.

John Dineen, Yesser, Glasson & Dineen, Providence, RI, for Plaintiffs.

Kevin F. McHugh, City of Providence, Providence, RI, for Defendants.

### OPINION AND ORDER

LAGUEUX, District Judge.

This case involves the denial of an adult entertainment license and the denial of a liquor license transfer for the same proposed establishment. Plaintiffs, Rhode Island Cranston Entertainment, Inc., also know as Saints and Sinners, and its President, Alan Bogossian, bring this action under 42 U.S.C. § 1983 alleging violations of the First Amendment by the City of Providence and the members of the Providence Board of Licenses ("Board"). Plaintiffs claim that their First Amendment rights were violated when the licenses were denied by the Board because the Board impermissibly infringed on Plaintiffs' right to open an adult entertainment establishment. Plaintiffs seek injunctive relief and damages.

This case is before the Court on plaintiffs' motion for partial summary judgement and defendants' cross-motion for summary judgement. The Court concludes that plaintiffs' First Amendment rights were violated by the Board, and issues a mandatory injunction requiring the Board to issue the adult entertainment license and also to grant the transfer of the liquor license.

STANDARD FOR SUMMARY JUDGEMENT

Plaintiffs moved for partial summary judgement pursuant to Rule 56. Defendants moved for summary judgement un-

der Rule 56(c). Under Rule 56(c), the Court may enter a summary judgement on the issue of liability alone "although there is a genuine issue as to the amount of damages." Plaintiffs are only asking for a resolution of the issue of liability and injunctive relief, not damages, costs and attorney's fees. Therefore, a Rule 56(c) motion is appropriate.

The Court must examine the record to determine if any genuine issue of material fact exists and whether the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c). If there are no questions of material fact, then summary judgement is appropriate on any questions of law. *Blackie v. Maine* 75 F.3d 716, 721 (1st Cir.1996). The coincidence that both parties move for summary judgement does not relax the standards under Rule 56. *Id.* Barring special circumstances, the District Court must consider each motion separately, drawing inferences against each movant in turn. *Id.*

## FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. In 1999, Alan Bogossian sought to open an adult entertainment club, Brief Encounters and Saints & Sinners, geared towards the gay community. He applied for the necessary licenses to operate such a business at 257 Allens Avenue, Providence. That property, 257 Allens Avenue, is located in an area of Providence zoned M–2 or Heavy Industrial District. Under the Providence Zoning Ordinance, adult entertainment is a permitted use in an M–2 zone.

In all, plaintiffs applied for a Food Dispenser License, a Sunday Sales License, an Adult Entertainment License and plaintiff Bogossian sought permission to transfer an existing Liquor License to this establishment. These license applications were made to the Board, the authority that issues licenses in the City of Providence.

The Board held a hearing on August 6, 1999 to discuss the liquor license transfer and adult entertainment license application. At that meeting, the Board took testimony from the applicant, the proposed landlord and three interested citizens. The Board members present were defendants Arline Feldman, Margaret DeFelice and Andrew Annaldo. Also present was the Chairman of the Board, Raymond Dettore, Jr. The members of the public who testified against the license applications were Councilman Louis Aponte, Councilwoman Belbina A. Young and Victor Capellan. The Chairman also read into the record a letter from the Washington Park Citizens Association and Washington Park Community Center. The landlord of 257 Allens Avenue, Ralph Cafaro, and plaintiff Alan Bogossian testified in favor of granting the licenses. John Reilly also appeared before the Board as counsel for Bogossian. The Board did not vote on the matter at the August 6, 1999 meeting.

The Board met again on October 8, 1999 to vote on the license applications. The Board took two separate votes, one on the adult entertainment license and one on the liquor license transfer. The Board denied each license application by a 4–1 vote, with only Chairman Dettore voting in support of the applications.

The two meetings of the Board were transcribed by a stenographer, and the transcripts of those meetings were submitted to the Court. The accuracy of the transcripts is not disputed.

Plaintiffs commenced suit in this Court on November 16, 1999. Three of the defendants moved for partial summary judgement raising the defense of qualified immunity. One defendant, Dettore, moved for dismissal pursuant to 12(b)(1) and 12(b)(6). On February 9, 2001, Magistrate Judge Martin issued a Report and Recommendation suggesting denial of defendants'

motions. This Court agreed with his recommendation. On March 15, 2001, this Court, reviewing the matter de novo, denied defendants' summary judgement motion and defendant Dettore's motions to dismiss.

Subsequently, plaintiffs moved for partial summary judgement under Rule 56. Plaintiffs claim that their First Amendment rights were violated by the Board when it denied the two license applications. Plaintiffs seek an injunction requiring the Board to approve the two licenses. Plaintiffs are not requesting a determination of damages, costs and attorney's fees at this time, since obviously there are disputed issues of fact relating to those issues.

Defendants assert that the Board's denial of the adult entertainment license was a permissible time, place and manner restriction on this type of speech. Defendants further argue that the Court should only consider the denial of the adult entertainment license in this proceeding because there is no federal right to a liquor license.

On March 29, 2001, the parties stipulated and an order was entered that Dettore was no longer on the Board. Gordon Fox, a new member of the Board, was added to the lawsuit solely in his official capacity as a member of the Board.

FIRST AMENDMENT CLAIMS

This Court must resolve two issues in this case. First, the Court must determine whether defendants' denial of the adult entertainment license violated plaintiffs' First Amendment rights. If the answer is yes, then the Court must also determine whether the Board's refusal to transfer the liquor license to the new establishment falls under the First Amendment protection accorded to nude dancing. It is well established that the First Amendment is made applicable to the states via the Fourteenth Amendment.

*Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

A.   The Adult Entertainment License

As Yogi Berra, that great 20th Century American philosopher said: "This is deja vu all over again." One year and ten days prior to the Board's vote on this adult entertainment license application, this writer issued a ruling that invalidated Providence's moratorium on the issuance of adult entertainment licenses. *D'Ambra v. City of Providence,* 21 F.Supp.2d 106 (D.R.I.1998). The dispute in *D'Ambra* was about an adult entertainment license for the very same property at issue in the instant case, 257 Allens Avenue. The challenge was to the same Board's actions. Even the lawyers for each side were the same.

There are, however, a few slight differences between the instant case and *D'Ambra.* Here, the Board did not explicitly state that it was creating a moratorium. Its members only said that they would not issue any more licenses for adult entertainment in an area of the city zoned for adult entertainment, implicitly creating a moratorium. Second, a liquor license transfer was also denied here. Third, the Chairman of the Board, Dettore, voted against issuance of the license in *D'Ambra,* but in favor of the applications here. He obviously had gotten the message emanating from this Court.

■   As this Court stated in *D'Ambra,* which obviously needs to be restated here, United States Supreme Court doctrine in this area has been stable for more than a decade. *D'Ambra,* 21 F.Supp.2d at 108. Adult entertainment, that is nude or semi-nude dancing, is protected by the First Amendment. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). The First Amendment makes no distinction between

male strippers and female strippers. It protects nude and semi-nude dancing, regardless of the size of the breasts on display.

■ Just because adult entertainment merits First Amendment protection, however, does not mean that it cannot be regulated. In an effort to curb the secondary effects of nude dancing, such as increased crime, the government may impose reasonable time, place and manner restrictions that do not forbid protected speech. *D'Ambra*, 21 F.Supp.2d at 113 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) and *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49–50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). The restrictions must be content neutral, be narrowly tailored and provide alternate channels for communication. *Id.* Most importantly, any regulation of adult entertainment cannot give unbridled discretion to the Board to reject an applicant for the content of his or her speech. *Id.* at 112–13.

■ In Providence, the City Council has established a zoning plan to address the secondary effects of adult entertainment. The Rhode Island Supreme Court has upheld this system of zoning as a constitutional time, place and manner restriction on this type of expressive conduct. *Di-Raimo v. City of Providence*, 714 A.2d 554 (R.I.1998). The Rhode Island Supreme Court has also held that the Providence City Council is the body that determines if an area is appropriate for adult entertainment. *Cadillac Lounge, LLC v. City of Providence*, 763 A.2d 993, 996–97 (R.I. 2001). Once the Council makes a legislative determination that the zoning plan promotes the public health, safety, morals and general welfare of the city, the Board cannot deny an adult entertainment license using the same criteria. *Id.* at 996 ("Neither this Court nor a municipality's licensing board may second-guess this legislative determination [that the zoning plan provides an appropriate place for adult entertainment]."). The parties here do not dispute the validity of the zoning ordinance.

When the Board denied the adult entertainment license, in this case, it was not imposing a reasonable time, place and manner restriction. The only reasonable restrictions on adult entertainment were contained in the zoning ordinance. *See id.* Any application for an adult entertainment license for a business within a district zoned by the City Council for adult entertainment cannot be denied by the Board because it is adult entertainment. *See D'Ambra*, 21 F.Supp.2d at 113; *Cadillac Lounge*, 763 A.2d at 996–97. The Board could deny a license for violations of a content neutral zoning regulation, but it cannot deny an adult entertainment license to an entity that complies with all aspects of the zoning ordinance.

Defendants claim that the Board was concerned with the negative secondary effects of adult entertainment, such as land values, safety and overall impact on the neighborhood. By enacting the zoning plan here, it was the City Council that opted to regulate and control these secondary effects of adult entertainment. The Board cannot impose its own additional requirements on plaintiffs when they seek an adult entertainment license. *See Cadillac Lounge*, 763 A.2d at 996–97. Therefore, in the absence of a specific zoning violation, any argument that the Board makes that its actions were an effort to control the secondary effects of adult entertainment fails as a matter of law.

From the transcripts of the two Board meetings, it is clear that the only reason that the Board denied the adult entertainment license was because it was for a proposed adult entertainment establishment. The Board members cited to no

zoning violations or application errors as the basis for denial.

The Board members stated that they voted because of the objections voiced at the hearing. Hr'g Tr., October 8, 1999, at 6. A brief summary of the testimony presented at the hearing demonstrates that the sole focus of the testimony and the Board's questions was to halt expansion of adult entertainment in that area. At the August 6, 1999 meeting, Councilman Aponte testified: "I'm here today in objection to this license ... predominately because this signifies an expansion of an already large adult entertainment establishment in the 10th Ward." Hr'g Tr., August 6, 1999, at 4. When asked if he was opposed to the license because it was for a gay club, he responded, "[w]e would oppose this if it were straight.... Our position is to the establishment and the further concentration of adult oriented businesses in that part of the city." *Id.* at 8.

Councilwoman Young also testified against additional adult entertainment clubs. "I can see this proliferation of this establishment coming down my end. I intend to fight it now before it gets down there. I don't believe we need any more establishments of this nature in our community." *Id.* at 13. In reference to adult entertainment clubs, she continued, "[i]t comes to a point of over saturation in one neighborhood, and I think this should stop right here. I'm opposed to it all, and I continue to oppose any more items coming on this street." *Id.* at 15.

Resident Capellan testified that "the residents, our elected officials are here to say that we do care about our neighborhood, and we don't want this kind of entertainment in our neighborhood." *Id.* at 21. A letter from the Washington Park Citizens Association was also read into the record stating that they are "against the continuing sprawl of adult entertainment along Allens Avenue." *Id.* at 22.

The Board members questioned the landlord of 257 Allens Avenue. During that questioning, Board member DeFelice stated, "I think we're overloaded. Eighteen percent, I think that's too much [of the city zoned permissible for adult entertainment]." *Id.* at 26. Board member Feldman also questioned Cafaro.

Ms. Feldman: [H]ow many other adult entertainment facilities are there right by you?

Mr. Cafaro: Three.

Ms. Feldman: Three others besides you?

Mr. Cafaro: Right.

Mr. Dettore: What do you mean?

Mr. Bogossian: There's only one with the license.

Ms. Feldman: Just one?

Mr. Dettore: One nightclub, but there is a bookstore, there's that—

Ms. Feldman: That's what I mean. All those adult places is how many including the bookstore and everything?

Ms. DeFelice: And Cheaters.

Mr. Cafaro: That has an adult entertainment license?

Ms. Feldman: Yes.

Mr. Cafaro: One.

Ms. Feldman: Just one. And you are proposing to put in another one?

Mr. Cafaro: Correct.

Ms. Feldman: No way.

*Id.* at 26–27.

When plaintiff Bogossian was questioned by the Board, Board member DeFelice stated, "you will never get my vote for a strip joint up there." She continued, "[y]ou've got enough of them. Start selling some religious goods or something. That's what you ought to be doing. You ought to be ashamed of yourself." *Id.* at 29.

The meeting concluded without a vote, because the City Council had passed a non-binding resolution asking the Board to consider a 30 day moratorium on liquor transfers and adult entertainment licenses. The Chairman decided to wait for a legal opinion from the City Solicitor. The legal question, as stated by the Chairman, was whether such a moratorium would be applicable to the pending matter. *Id.* at 31.

The Board finally voted on both license issues at the October 8, 1999 Board meeting. The adult entertainment license application was denied by a 4–1 vote. Hr'g Tr., October 8, 1999, at 8–9. Chairman Dettore voted to grant the license. *Id.* Board member Constantino voted on this issue, although he was not present at the August 6th hearing.

Prior to the vote, several board members expressed their reasons for voting to deny the licenses. Board Member Feldman stated, "I can't go along with the liquor license if later on, on the [adult entertainment license], I will go against adult entertainment. So I would have to deny the whole thing, because I feel right now in the City we have enough of these licenses going around and I am definitely against the transfer." *Id.* at 5. Board Member Defelice explained her reasons for voting against the license. "First we had both council people here talking to us and they are adamant about not having anymore of these establishments in their neighborhood. And I have to go along with that. I think that we have enough adult entertainment. I can't see anymore in Providence." *Id.* at 6. Board member Annaldo stated that "I will concur with the two previous members [Feldman and Defelice] . . ." *Id.* Board member Constantino stated that they should defer to the people living in the neighborhood, specifically the two council people and neighborhood associations, and that he "concurred with their feelings." *Id.*

From the statements made at the August 6, 1999 meeting and the October 8, 1999 meeting, it is abundantly clear to this Court that the Board did not rely on a legitimate, content neutral zoning reason to deny the adult entertainment license. The Board did have some discussion, albeit tangentially, concerning the effects that an adult entertainment establishment would have on crime, property values, and overall attractiveness of the neighborhood. Determinations about the secondary effects of adult entertainment, however, are outside the domain of this Board. *See Cadillac Lounge,* 763 A.2d at 996–97. Ultimately, the license was only denied because the proposed establishment was for adult entertainment. This is not a reasonable time, place and manner restriction, but rather is state action restricting speech on the basis of its content. *See D'Ambra,* 21 F.Supp.2d at 113–14. It is absolutely, without a doubt, unconstitutional. *Id.*

Furthermore, the Board, in its statements, did everything but use the word "moratorium". A moratorium on issuing adult entertainment licenses was found unconstitutional in *D'Ambra. Id.* at 112–14. The objections expressed at the meeting were directed, not at this specific establishment, but at eliminating any future adult entertainment establishments in this area. Thus, the Board's actions reek of a government decision-maker using its unbridled power to silence unpopular speech. *See id.* at 111–12 (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). Luckily, when protecting the constitutional rights of the citizens of this country, the Court need not look for specific, trigger words such as "moratorium". If that were so, it would be too easy for an abusive government to circumvent constitutional protections of individual rights. Instead, this Court looks to the actions taken by the governmental body. The denial of this

license is every bit as unconstitutional as the denial of the license in *D'Ambra.* The Board's denial of the adult entertainment license was a violation of plaintiffs' First Amendment rights.

## B. The Liquor License Transfer

■ Defendants argue that there is no federal right to a liquor license, and, therefore, this Court cannot address the Board's denial of the liquor license transfer. When issuing a liquor license, a state must comply with the constitutional requirements of the First Amendment, despite the presence of the Twenty–First Amendment. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996).

It is a basic premise that the Bill of Rights, although conferring some specific, positive rights onto individuals, is primarily a check against the abusive exercise of governmental power. Under the First Amendment, a governmental unit cannot use its power to silence an individual's speech. The analysis does not begin with a specific federal right, such as a right to a liquor license. Additionally, it is not the exact mechanism or the exact words by which the government suppresses such speech that is the focus of the Court's attention. Instead, the Court determines if the government action impermissibly burdens speech.

A threat to take away a liquor license may have a chilling effect on a person's ability to exercise a protected activity under the First Amendment. *See, e.g., G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1076 (6th Cir. 1994); *Atlantic Beach Casino, Inc. v. Morenzoni,* 749 F.Supp. 38, 42 (D.R.I.1990). While there is no explicit right to a liquor license, there is a right not to have a liquor license be used as a tool to silence First Amendment rights. The Supreme Court explained this principle nearly thirty years

ago. "For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ In this case, the speech in question is adult entertainment. Plaintiffs sought the transfer of a liquor license for the adult entertainment bar. Defendants denied transfer of the liquor license to frustrate plaintiffs' attempt at opening an adult entertainment establishment. *See* Hr'g Tr., October 8, 1999, at 5–7. There is no evidence that the Board ever considered an independent reason for denying the liquor license transfer. The liquor license transfer was denied because it was part of an application that included an adult entertainment license. *See id.* In effect, as long as the applicant was applying for an adult entertainment license, the applicant would not receive a liquor license. This is tantamount to the government conditioning the grant of a benefit on an agreement to refrain from exercising a constitutional right. *See G & V Lounge,* 23 F.3d at 1077 (threatened revocation of liquor license for topless dancing raised First Amendment issue). The Constitution prohibits this type of extortion. *See Perry,* 408 U.S. at 597, 92 S.Ct. 2694.

The Court has scoured the record for an independent reason that the Board may have expressed for denying the liquor license transfer. The Court's search has been in vain. The two licenses were treated as one and the same. The two matters were not even given separate hearings be-

fore the Board. The Court can cite numerous examples where the witnesses and Board members conflated the applications. For example, Councilwoman Young testified, "[t]hey have a right to free speech, but there comes a point in time where we have a right too. I think that's being overlooked. The people that live there, we have rights too also. So, Mr. Chairman, I ask you, please, do not grant these licenses; do not grant this transfer. We have had enough in our community." Hr'g Tr., August 6, 1999, at 15–16. The letter from the Washington Park Citizens Association opposed the transfer of the liquor license because there were too many adult entertainment establishments in the area. *Id.* at 22–23. When Councilman Aponte testified at the August 6, 1999 hearing, he was asked for specific reasons that he opposed the liquor license transfer. He responded that he opposed it for the "same reasons" that he opposed the adult entertainment license. *Id.* at 8

At the meeting on October 8, 1999, the Board voted to deny the liquor license transfer. The statements made by the Board members at that meeting (already recited by this Court) show that they treated the liquor license and adult entertainment license as one and the same. *See* Hr'g Tr., October 8, 1999, at 5–7. Chairman Dettore even noted that "it appears from the comments of the members of the Board [regarding the liquor license transfer] that the general consensus would be to deny the adult entertainment license.... Realizing it is difficult to separate-when discussing your reasons maybe for denying a license, it is difficult to separate, but it is clear that is the consensus of the members of the Board?" *Id.* at 7–8. To which, the Board responded affirmatively. *Id.* at 8–9.

Because the Board treated the adult entertainment license and the liquor license transfer as one application, the Board violated the First Amendment when it denied the liquor license transfer.

REMEDIES

In denying the adult entertainment license and liquor license transfer, the Board abused its power and committed a constitutional violation. One remedy for such a violation is a declaration that the action or policy is invalid. *D'Ambra,* 21 F.Supp.2d at 114. This Court declares the denial of the adult entertainment license unconstitutional because it violates the First Amendment. Similarly, because the Board denied the liquor license transfer solely because it was linked with the adult entertainment license, this Court declares that action a violation of the First Amendment.

Plaintiffs have also requested injunctive relief. Injunctive relief is an appropriate remedy for a constitutionally defective police power regulation. *See id.* This Court may issue permanent injunctive relief. This type of relief is particularly appropriate were the Court seeks "to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Brown v. Trs. of Boston Univ.,* 891 F.2d 337, 361 n. 23 (1st Cir. 1989) (quoting *NLRB v. Express Publ'g Co.,* 312 U.S. 426, 435, 61 S.Ct. 693, 85 L.Ed. 930 (1941)). An injunction, however, should also be narrowly tailored to give only the relief to which the plaintiff is entitled. *Id.* at 361.

Here, it is abundantly clear to the Court, from the past actions of defendants, that there is a high probability that they will continue to violate the Constitution unless the Court issues an injunction. The Court has repeatedly cited two cases in this decision, *D'Ambra* and *Cadillac Lounge,* where the Board's denial of a license has

been determined to violate the First Amendment.

CONCLUSION

For the preceding reasons, defendants' motion for summary judgement is denied. Plaintiffs' motion for partial summary judgement is granted.

This Court concludes that the Board acted in violation of the First Amendment when it denied both the liquor license transfer and the adult entertainment license. Moreover, this Court concludes that injunctive relief is appropriate because the defendants' show a high likelihood of continuing their unconstitutional behavior unless mandated by the Court to act otherwise. The issue of damages, costs and attorney's fees will be dealt with in further proceedings.

This Court hereby mandates that defendants issue the adult entertainment license and grant the liquor license transfer forthwith. No judgement shall enter until all claims are resolved.

It is so ordered.